IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| United States of America, | Cr. Nos. 3:09-825-CMC |
| | 3:10-611-CMC |
| v. | |
| Leroy Goodwin, | Order |
| Defendant. | |

This matter is before the court on Defendant's motion for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i), for "extraordinary and compelling reasons," and under Amendment 821. ECF No. 105.[1] Defendant, through counsel, requests the court reduce the "unusually long sentence" he is serving under U.S.S.G. § 1B1.13(b)(6), based on a change in the law regarding § 851, and because his mother needs a caregiver and Defendant is the only person available to do so.[2] In addition, he asserts he was assigned "status points" for his conviction while under a criminal justice sentence, and the law has changed under Amendment 821. He is currently serving a 219-month sentence, running concurrently in cases 10-611 and 09-825, and has a projected release date of March 31, 2027.

The Government opposes reductions for compassionate relief and under Amendment 821. ECF No. 111. It argues Defendant does not meet the requirements of U.S.S.G. § 1B1.13(b)(6). Specifically, it contends Defendant cannot establish changes in the law produce a grossly disparate

---

[1] The court will refer to the docket numbers for Case No. 10-611. The briefing, other than the initial motion, was filed in Case No. 09-825 at ECF Nos. 1970 (SRR); 1974 (Government's memorandum); 1975 (attachments to memorandum); and 1979 (Defendant's reply).

[2] Attached to Defendant's motion are various letters and documents supporting his request.

sentence, and there is no extraordinary and compelling reason for early release. It also asserts the Department of Justice's position the Sentencing Commission exceeded authority delegated by Congress when it promulgated § 1B1.13(b)(6), such that defendants are not entitled to relief under that subsection. It attaches Defendant's previous requests to his Warden and the subsequent denials, his "FSA Profile," and disciplinary record. Finally, the Government asserts the § 3553(a) factors weigh against release.

A Sentence Reduction Report ("SRR") was filed by the Probation Office. ECF No. 108. Probation noted Defendant had a criminal history category III at sentencing, with five criminal history points. After implementation of Amendment 821, he has three criminal history points and therefore is a category II. However, Defendant was subject to a mandatory minimum sentence of 240 months, reduced to 219 months at sentencing pursuant to U.S.S.G. § 5G1.3(b). Therefore, as long as Defendant's mandatory minimum remains 240 months, he is not entitled to relief under Amendment 821. *Id.* at 2.

Defendant filed a reply, in which he argues § 1B1.13(b)(6) is "squarely within both Sentencing Commission authority to promulgate and district court authority to consider in compassionate release." ECF No. 116 at 5. He contends his sentence is disparate because, without the § 851 enhancement, but with the benefit of Amendment 821 if sentenced today, his mandatory minimum would be 120 months and his guideline range would be 168-210 months. He requests the court sentence him to the bottom of that guideline range minus 21 months, as he was sentenced originally. In addition, he notes his mother's health is failing and he would alleviate the family's strain by caring for her. Finally, he asserts analysis of the § 3553(a) factors reveals good conduct while imprisoned and family support once released.

2

I. *<u>Compassionate Release</u>*

   A. **Section 3582(c)(1)(A) motions brought by Defendants**

The court, on motion of a defendant after 1) fully exhausting administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on his behalf, or 2) the lapse of 30 days from receipt of such a request by the warden of the facility, whichever is earlier, may reduce the term of imprisonment. 18 U.S.C. § 3582(c)(1)(A) (as amended by First Step Act).[3] Section 3582(c)(1)(A)(i) allows a court to modify a term of imprisonment once it has been imposed for extraordinary and compelling reasons if such a reduction is consistent with the applicable policy statement issued by the Sentencing Commission. Previously, there was not an applicable policy statement because the Sentencing Commission lacked a quorum when § 3582(c)(1)(A) was amended by the First Step Act. However, the Commission has reestablished a quorum and updated the Policy Statement at § 1B1.13 to include motions brought by defendants.

Accordingly, the court may now reduce a term of imprisonment if, after considering the factors set forth in 18 U.S.C. § 3553(a), it determines extraordinary and compelling reasons warrant a reduction, the defendant is not a danger to the safety of any other person or to the community, and the reduction is consistent with the Policy Statement at § 1B1.13(b). The new Policy Statement also amended what can be considered extraordinary and compelling reasons, including the following (in pertinent part):

---

[3] The Government agrees Defendant has petitioned his Warden for a reduction in sentence, and does not dispute this motion is properly before the court after exhaustion of administrative remedies. ECF No. 111 at 7.

3

(3) <u>Family Circumstances of the Defendant</u>
(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(6) <u>Unusually Long Sentence</u>.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

§ 1B1.13(b).

## B. **Previous Motion for Compassionate Release by Defendant**

Defendant brought a previous motion for compassionate release on February 21, 2021, arguing in part his enhancement under § 851 would not apply if sentenced today. ECF No. 82. The motion was fully briefed, and the court denied Defendant's motion. ECF No. 98. Specifically, regarding the disparity/§ 851 argument, the court noted

> If sentenced today for the same drug offense, Defendant's statutory range would be 10 years to Life instead of 20 years to Life. His guideline range would also be impacted by Amendment 782, and would be 188 to 235 months based on a total offense level of 34 and criminal history category III. On the money laundering count (Case No. 3:10-611), because the counts were grouped together, his total offense level would also be 34, criminal history category III. Given the same 21-month reduction for the undischarged term he was serving at the time, the bottom of the reduced guideline range would be 167 months. However, Defendant's sentence of 219 months is within the 188–235-month guideline range. Although the top of the adjusted guideline range, including the 21-month reduction, would be 214 months, the court agrees with the Government this disparity is quite small.

*Id.* at 6.

A footnote explained:

> Defendant's original guideline range, as affected by the minimum term of 20 years required by statute, was 240-293 months. Without the § 851 enhancement, the guideline range would have been 235-293 months. After application of Amendment 782, Defendant's total offense level if sentenced today would be 34, criminal

4

history category III, for a guideline range of 188-235 months. The money laundering count in Case No. 10-611 would have no impact on the guideline range since the counts were grouped together under U.S.S.G. § 3D1.2(c). Given the same 21-month reduction applied at sentencing for the undischarged Illinois term, the bottom of the guideline range would be 167 months.

*Id.* at 6n6.

### C. <u>Extraordinary and Compelling Reasons</u>

    *i.    Unusually Long Sentence*

Defendant's instant motion again relies on the disparity/§ 851 argument, as now brought under the new Policy Statement promulgated in 2023, specifically § 1B1.13(b)(6). The analysis, accordingly, has changed from when the court adjudicated Defendant's previous motion. Under the new subsection, Defendant must be serving an unusually long sentence; have served 10 years of the term of imprisonment; and a change in the law may be considered if that change produces a "gross disparity" between the sentence being served and the one "likely to be imposed at the time the motion is filed." §1B1.13(b)(6).

Defendant has served over 10 years of his sentence, and thus meets this requirement. However, the Government contends Defendant's 219-month sentence is not "unusually long." ECF No. 111 at 13. When a defendant has a clearly unusually long sentence on its face, courts have little difficulty concluding this portion of the Policy Statement is met. *See, e.g., United States v. Brown*, 78 F.4th 122, 131 (4th Cir. 2023) ("First, we are struck by the "sheer and unusual length of Brown's sentence. At thirty-four years old, Brown was sentenced to fifty-seven years in prison – functionally a life sentence - . . ."). However, for defendants sentenced to lower terms, courts have expressed confusion over how to determine whether such a sentence is "unusually long." For example, one district court in Maryland viewed the issue this way:

> The Policy Statement does not define the term "unusually long sentence." As a result, there is considerable uncertainty about when a sentence should be considered "unusually long." To illustrate, a sentence might be considered "unusually long" if it is significantly longer than the average of all sentences imposed in a given year, including sentences for less serious crimes. In contrast, a sentence might be "unusually long" if it is significantly longer than the average national sentence imposed for similar offenses only. Even if a court decides that a defendant's sentence is appropriately compared to sentences imposed for similar crimes, certain questions remain: should the court compare the defendant's sentence to the average national sentence, the average in the circuit in which the court sits, or the average in the district in which the court sits?
>
> In view of these uncertainties, I shall construe the phrase "unusually long sentence" in the manner most favorable to defendant. In particular, I shall consider defendant's sentence "unusually long" if it is significantly longer than the average of all sentences imposed nationwide in a given year.
>
> According to the Sentencing Commission, the average length of the sentences imposed in 2022 was 51 months. See Interactive Data Analyzer, United States Sentencing Commission, https://ida.ussc.gov/analytics/saw.dll?Dashboard (last visited Dec. 18, 2023). As noted, defendant's total sentence is 235 months, ECF 69 at 2, which is 184 months longer than the average sentence imposed in 2022. I am satisfied that defendant's sentence qualifies as "unusually long" when compared to the average sentence imposed in 2022.

*United States v. Howard*, No. CR ELH-13-0629, 2024 WL 112010, at *15–16 (D. Md. Jan. 10, 2024). Similarly, the Fourth Circuit compared, albeit prior to the 2023 Amendments, a defendant's prison sentence for drug distribution and firearm possession with the average sentence imposed for far more serious and violent crimes, including murder and kidnapping. *Brown*, 78 F.4th at 131. Finding Brown's sentence was "substantially longer" than more serious crimes, the court determined his sentence length was excessive. *Id.* Accordingly, it appears to the court that comparing a defendant's individual sentence to other sentences can help determine whether the given sentence is "unusually long."

Defendant's sentence of 219 months is not "unusually long" on its face, as compared to defendants in other Fourth Circuit cases with sentences of over 35 years. *See, e.g., United States*

6

*v. McCoy*, 981 F.3d 271 (4th Cir. 2020) (superseded by regulation) (affirming reduction of McCoy's sentence from 421 months – just over 35 years - to approximately 17 years; and Bryant, Decator, and Scott's sentences from between 52 and 53 years to approximately 25 years). The court acknowledges Defendant's sentence is less than half of those eye-popping terms. However, in comparison, the average length of sentences imposed in federal courts in 2023 was 52 months. In the Fourth Circuit, the average sentence was 75 months, and in the District of South Carolina, 72 months. *Interactive Data Analyzer*, United States Sentencing Commission; https://ida.ussc.gov/analytics/saw.dll?Dashboard (last visited May 8, 2024). All of these averages are less than half of Defendant's 219-month sentence, and the national average is about 25% of Defendant's sentence.

In addition, the court has compared Defendant's sentence to similar defendants sentenced under the same guideline and criminal history category. *Judiciary Sentencing Information* ("JSIN"), https://www.ussc.gov/guidelines/judiciary-sentencing-information (last accessed May 16, 2024). For defendants sentenced in the last five fiscal years (2019-2023), whose primary guideline was § 2D1.1 with powder cocaine as the primary drug type, and a final offense level of 34 and criminal history category II[4], the average sentence imposed was 128 months, and the median sentence imposed was 110 months.[5] https://jsin.ussc.gov/analytics/saw.dll?Dashboard&PortalPath=%2Fshared%2FJSIN%2F_portal%2FJSIN&page=Sentencing%

---

[4] As more fully explained below, this offense level and criminal history category would apply if Defendant were sentenced today.

[5] Defendant has a concurrent sentence based on the money laundering charge, for which the guideline section is § 2S1.1. However, that count is dependent on the § 2D1.1 guideline when determining the offense level. As such, it also decreases based on drug weight due to Amendment 782. The guideline range under § 2D1.1 drives Defendant's guideline range.

7

20Table. Accordingly, Defendant's sentence may be considered unusually long as compared to those defendants sentenced today, both generally and under his specific guideline.

Next, the court analyzes Defendant's allegation that a change in the law would create a disparity between the sentence previously imposed and the one he would receive if sentenced today. The Fourth Circuit has recently held, albeit in the setting of a pre-Policy Statement amendment motion for compassionate release, that "[n]onretroactive changes in the law remain relevant when a court has to decide when and how to modify a sentence." *United States v. Davis*, 99 F.4th 647, 658 (4th Cir. 2024). Although the defendant in *Davis* filed his motion prior to the 2023 amendments to the Policy Statement, the Fourth Circuit explained its previous case of *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020) held district courts could consider any extraordinary and compelling reasons raised by a defendant, and allowed consideration of a change in the law and resulting disparity. *Id.* The *Davis* court then noted the Supreme Court in "*Concepcion* and the latest policy statement serve to confirm and amplify this Court's earlier ruling" that changes in the law are relevant to sentence modification under compassionate release. *Id.* (citing *Concepcion v. United States*, 597 U.S. 481, 494 (2022)).

Defendant argues his statutory enhancement under § 851, that would not apply if sentenced today, results in a sentencing disparity. In the First Step Act, Congress narrowed the universe of drug convictions that can properly serve as predicate offenses used to enhance a sentence under § 851. After the First Step Act, a prior drug conviction qualifies as a predicate for enhanced penalties if it is a "serious drug felony," punishable by a maximum of ten years, instead of a "felony drug offense" punishable by a minimum term of one year. In addition, the conviction qualifies only if the defendant actually served over twelve months imprisonment.

8

If sentenced today for the same offense, the § 851 enhancement would not apply, as Defendant did not serve over twelve months imprisonment on either of the noticed convictions.[6] Accordingly, he would not be subject to a mandatory minimum of 240 months. Under *Davis*, this nonretroactive change in the law in § 401 of the First Step Act can be considered an extraordinary and compelling reason warranting a sentence reduction.

Finally, the court considers whether the removal of the § 851 enhancement would result in a "gross disparity" between Defendant's sentence and the one he would receive if sentenced today. The court sentenced Defendant to the then-mandatory minimum of 240 months, with an adjustment of 21 months for a period of imprisonment previously served on an undischarged term for which the Bureau of Prisons would not give credit, for a total sentence of 219 months. ECF No. 57 at 2. Without the § 851 enhancement, the parties appear to agree the guideline range if Defendant were sentenced today would be 168-210 months (after application of Amendments 782 and 821).[7] With a comparable adjustment downward of 21 months as applied at sentencing under § 5G1.3(b), that guideline range becomes 147-189 months.

---

[6] An Information was filed in this case, notifying Defendant he was subject to enhanced penalties under 21 U.S.C. § 851. ECF No. 1041. The convictions listed were a 2000 New York criminal possession of controlled substance with intent to sell and a 2002 North Carolina possession with intent to distribute marijuana. *Id.* Defendant was sentenced to five years' probation on the New York case, and six to eight months imprisonment suspended with 36 months of supervised probation in the North Carolina case. ECF No. 60 at 24-25.

[7] An Order denying a previous motion for compassionate release listed the guideline range at 188-235 months. See ECF No. 98 at 6. However, Amendment 821 has now taken effect, and reduces Defendant's criminal history score from III to II, lowering the applicable guideline range further and creating a more significant disparity.

Although the Government contends there is not a "gross disparity" because Defendant's sentence of 219 months is only nine months higher than the top end of the applicable guideline range, this does not take into account the 21-month adjustment applied for a period of imprisonment previously served on an undischarged term for which the BOP would not give credit. In addition, Defendant received a sentence at the bottom of the guideline range applicable at sentencing. The bottom of the guideline range that would be applicable today with the § 5G1.3(b) adjustment is 147 months, lower than his current sentence by 72 months, or six years.[8]

### a. Authority of Sentencing Commission

The Government argues § 1B1.13(b)(6) cannot be utilized to reduce a defendant's sentence because the Sentencing Commission exceeded its authority when promulgating this section. Specifically, it contends the Commissions' decision to allow nonretroactive changes in the law to establish a basis for sentence reduction "supplants Congress's legislative role" by authorizing courts to revisit sentences based on intervening legal developments Congress did not wish to make retroactive. ECF No. 111 at 11.

Congress directed that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentencing reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 944(t). The only restriction included by Congress was that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.*

---

[8] Further, if Defendant received a downward variance, his sentence could reach as low as 120 months, the applicable mandatory minimum if sentenced today.

Nothing in the statutory text of § 944(t) or § 3582(c)(1)(A) prohibits the Commission from considering nonretroactive changes in the law as extraordinary and compelling reasons. *United States v. Allen*, __ F. Supp. 3d __, 2024 WL 631609, at *5 (N.D. Ga. Feb. 12, 2024); *United States v. Capps*, No. 1:11-cr-108, 2024 WL 880554, at *7 (E.D. Mo. Jan. 31, 2024). Neither does the First Step Act contain such a prohibition; in fact, the Supreme Court has held "[t]he First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act." *Concepcion v. United States*, 597 U.S. 481, 487 (2022); *see also Davis*, 99 F.4th at 658 ("Nonretroactive changes in law remain relevant when a court has to decide when and how to modify a sentence."). Congress could have inserted a blanket prohibition on changes in the law not declared retroactive if it so desired. Further, Congress was presented with the opportunity to express its disapproval of this change made by the Commission, and remained silent, allowing the amendments to take effect. See § 994(p) (stating the Commission promulgates proposed guideline amendments with a statement of reasons to Congress, and such amendments take effect November 1 unless "the amendment is otherwise modified or disapproved by Act of Congress.").

Other district courts around the country have rejected the argument that the Commission lacked authority to enact § 1B1.13(b)(6). *See, e.g., United States v. Martinez*, No. 2:01-CR-00564-TC, 2024 WL 866822, at *6 (D. Utah Feb. 29, 2024) ("Because enacting the amendment was within the Sentencing Commission's power, and Mr. Martinez satisfies the USSG § 1B1.13(b)(6) criteria, he is entitled to a sentence reduction."); *United States v. Henderson*, No. 4:08-CR-00187-AGF, 2024 WL 881253, at *9 (E.D. Mo. Feb. 23, 2024) ("Nothing in the statute's text prohibits the Commission from considering nonretroactive changes in the law as extraordinary and compelling reasons for a sentence reduction."); *United States v. Allen*, No. 1:09-cr-320, 2024 WL

11

631609, at *5 (N.D. Ga. Feb. 12, 2024) (concluding the amendment was within the Sentencing Commission's power and presents no separation of powers issues); *United States v. Brown*, No. 2:95-cr-66(2), 2024 WL 409062, at *4–5 (S.D. Ohio Feb. 2, 2024) (same); *United States v. Padgett, Jr.*, No. 5:06-cr-13, 2024 WL 676767, at *1 (N.D. Fla. Jan. 30, 2024) (holding the amendment is valid); *but see United States v. Crandall*, No. 89-CR-21, 2024 WL 945328, at *8 (N.D. Iowa March 5, 2024) ("[T]he Court finds that the Commission does not have the authority to circumvent Congress in authorizing compassionate release based on nonretroactive changes in the law.").[9]

Accordingly, the court joins the weight of authority on the issue and finds § 1B1.13(b)(6) does not violate separation of powers. The Sentencing Commission, under directive from Congress, promulgated new amendments, and within its authority, defined extraordinary and compelling reasons. This court will not disturb the Commission's work.

    *ii. Family Circumstances*

Defendant also asserts his mother is in extremely ill health and requires constant care for all aspects of daily life. Her medical ailments include: brain lesions, hypertension, asthma, rheumatoid arthritis, chronic renal disease, osteoarthritis, and osteoporosis. She is 77 years old.

---

[9] Courts in the Third and Seventh Circuits remain bound by circuit precedent, decided prior to the 2023 Amendments, foreclosing relief under § 1B1.13(b)(6). *United States v. Andrews*, 12 F.4th 255 (3d Cir. 2021) (holding the "duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance," and neither does a nonretroactive change in the law); *United States v. Black*, __ F. Supp. 3d __, 2024 WL 449940 (N.D. Ill. Feb. 6, 2024) ("[T]he Seventh Circuit has interpreted 18 U.S.C. § 3582(c)(1)(A) to preclude a nonretroactive amendment to a statutory sentence from being considered an extraordinary and compelling reason to reduce a sentence. As the Seventh Circuit has construed that statute, the amended U.S.S.G. § 1B1.13(b)(6) is not a reasonable reading of § 3582(c)(1)(A). Thus, this court cannot defer to the Commission's interpretation of the statute under *Chevron*."). As these cases do not reflect the law in this circuit, this court is not bound by those holdings.

Defendant has attached a letter from his mother noting he "would be best suited to assist [her] at this time because both of his sisters are employed full time and have their own families to take care of." ECF No. 105-3 at 2. Also attached is a letter from Ms. Goodwin's rheumatologist, noting she has "advanced Rheumatoid arthritis and severe osteoarthritis of her knees," and would "benefit from assistance in home care with activities of daily living such as house chores (cleaning, vacuuming, laundry) and with meal preparation." ECF No. 105-12 at 1. A letter from Defendant's sister states she is currently the primary caregiver, and if Defendant was released "he would be willing to help provide assistance by providing care in addition to spending quality time with our mother." *Id*. at 2.

The Government response notes it is clear from the letters attached to Defendant's motion that his mother is currently being cared for by Defendant's sister, and Defendant's release plan would be to live in the same home with them. ECF No. 111 at 27. The letters also note Defendant would be working outside the home once released, so he could not be the sole caretaker of his mother, as he too would be employed.

In response, Defendant concedes he has siblings who are taking care of their mother, but asserts he is "uniquely able to alleviate" the strain on the family. ECF No. 116 at 8.

The subsection of § 1B1.13(b) on which Defendant relies here requires incapacitation of the defendant's parent and that the defendant is the only available caregiver for the parent. The court agrees with the Government that is not the case here, as Defendant's sister is caring for their mother, and Defendant would likely have a job if released that would preclude him from being a full-time caregiver. As Defendant does not meet the requirements of this portion of the guideline, release is not appropriate under § 1B1.13(b)(3)(c).

### iii. Conclusion as to Extraordinary and Compelling Reason

For the reasons above, the court finds Defendant has met the criteria for an extraordinary and compelling reason for a sentence reduction pursuant to § 1B1.13(b)(6). Accordingly, the court will proceed to evaluate the § 3553(a) factors and dangerousness.

### D. The § 3553(a) factors

#### i. Nature and Circumstances of the Offense

Defendant was a supervisor in a large drug conspiracy distributing multi-kilogram quantities of cocaine in the Columbia area of South Carolina. He was held responsible for nearly 112 kilograms of cocaine, and received a role adjustment as a supervisor or manager of the drug trafficking organization. He also engaged in money laundering activities with others in the conspiracy and pooled profits from his drug trafficking activities to acquire additional drug quantities.

#### ii. History and Characteristics

Defendant was 34 years old when he was sentenced. He had previous convictions for unauthorized use of a vehicle, attempted criminal possession of a controlled substance (cocaine) in New York, possession of cocaine (North Carolina), possession with intent to distribute marijuana (North Carolina), and unlawful possession of a controlled substance with intent to deliver (Illinois). His criminal history category was III at sentencing, but would be II after application of Amendment 821. He was single with no children, had a GED, and attended community college for one semester. He is currently 45 years old and has a projected release date of March 31, 2027.

### iii. Kinds of Sentences Available and Sentencing Range Established

Defendant pled guilty to one count of conspiracy to possess with intent to distribute and distribution of cocaine in Case No. 09-825, and one count of conspiracy to commit money laundering in Case No. 10-611. Because Defendant had a previous conviction that served to increase his statutory penalties under 21 U.S.C. § 851, the statutory range was 20 years to Life imprisonment in Case No. 09-825, and the statutory maximum on Count 1 of Case No. 10-611 was 20 years. The guidelines were grouped, and the range was 240 to 293 months for both counts. Pursuant to U.S.S.G. § 5G1.3(b), the court adjusted his sentence for a period of imprisonment already served on an undischarged term from Illinois for related conduct, and sentenced Defendant to 219 months in each case, concurrent with the Illinois sentence.[10]

As noted in the previous order on compassionate release, if sentenced today for the same offense, the § 851 enhancement would not apply to Defendant's federal drug conviction. His guideline range after application of Amendments 782 and 821 would be 168-210 months. Because of the grouping of the counts in the guideline calculations, the guideline range on the money laundering count would be affected as well. With the 21-month adjustment under § 5G1.3(b), the range would be 147-189 months.

### iv. Need to Avoid Unwarranted Sentencing Disparities

There were numerous co-defendants in this case who received comparable or lower sentences than Defendant. Based on the differences in criminal histories and enhancements such as those under § 851 and/or the career offender guideline, the court finds no unwarranted

---

[10] Defendant was sentenced on January 11, 2012, to twelve years' imprisonment on related Illinois state charges for unlawful possession of a controlled substance with intent to deliver.

sentencing disparity between co-defendants would result if Defendant's sentence is reduced. Almost all the co-defendants in this case have been released from custody.

> v. *The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and adequately deter Defendant and others.*

Defendant has served approximately 139 months of his 219-month sentence. He has an extremely good record in both the Illinois Department of Corrections and the BOP, with no disciplinary infractions, and commendations from correctional officers. He has attached certificates of completion for numerous educational classes. He has a release plan, a place to live with his sister and mother, and employment secured. Defendant's offense conduct was serious, with large amounts of drugs involved, and Defendant played a managerial role and laundered money for the conspiracy. However, the court believes a reduced sentence would fulfill the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and adequately deter Defendant and others.

> vi. *Dangerousness*

The court must also assess dangerousness under § 1B1.13(a)(2). Defendant's criminal history mainly comes from controlled substances offenses. He has shown rehabilitation while in the Illinois Department of Corrections and the BOP, completing drug treatment, significant programming, and receiving no disciplinary write-ups. The BOP considers him a minimal risk for recidivism. It does not appear Defendant would be a danger to the safety of any other person or to the community as set forth in § 1B1.13(a)(2).

## II. *Conclusion*

The court finds an extraordinary and compelling reason for a sentence reduction based on a sentencing disparity and Defendant's unusually long sentence. See § 1B1.13(b)(6). Defendant

has already served a significant sentence for his criminal conduct. If sentenced today he would face a sentence of 147 months imprisonment. During his time in custody, he has made strides toward preparing himself for release and demonstrated an ability to remain law abiding. The sentence already served constitutes just punishment, provided needed educational and vocational training, protected the public, and has had a deterrent effect on Defendant. He will be on supervised release for ten years.

Accordingly, Defendant's motion for reduction in sentence (ECF No. 105) is granted as to the request for compassionate release.[11] Defendant's previously imposed sentences of 219 months concurrent on Count 1 in Case No. 3:09-825 and Count 1 in Case No. 3:10-611 will be reduced to 147 months concurrent in each case, with all other portions of the previous judgment entered September 12, 2012, to remain in effect. If the sentences are less than the amount of time Defendant has already served, the sentences in Case No. 3:09-825 and Case No. 3:10-611 are reduced to Time Served.

**IT IS SO ORDERED**.

s/Cameron McGowan Currie  
CAMERON MCGOWAN CURRIE  
Senior United States District Judge

Columbia, South Carolina  
May 20, 2024

---

[11] Defendant's motion for application of Amendment 821 is moot.